

# NUMBER 13-21-00214-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE TEXAS DEPARTMENT OF TRANSPORTATION

## On Petition for Writ of Mandamus.

# OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Opinion by Chief Justice Contreras**

This original proceeding concerns the construction and application of a federal statute governing the discovery and admissibility of certain reports and surveys regarding highway safety data. *See* 23 U.S.C. § 409.[1] On July 12, 2021, relator Texas Department of Transportation (TxDOT) filed a petition for writ of mandamus seeking to compel the trial court to vacate its order of June 23, 2021, compelling TxDOT to produce Pavement

---

[1] On November 15, 2021, during the pendency of this original proceeding, 23 U.S.C. § 409 was transferred to 23 U.S.C. § 407 without substantive change. We refer to the statute herein as it was designated when this matter was filed.

Management Information System (PMIS) data, including skid testing data, which TxDOT asserts is privileged and thereby exempt from discovery under this statute. *See id.* Construing the statutory language as we must, we agree with TxDOT. *See id.* Accordingly, we conditionally grant the petition for writ of mandamus.

## I.   BACKGROUND

Real parties in interest Tanya Simpson, individually, and as representative of the estate of Floyd Simpson, and as next friend of Jurnee Alexis Simpson; Amber Simpson; and Lauren Dior Simpson (the Simpsons) filed suit against TxDOT and others for survival and wrongful death damages arising from the death of Floyd Simpson in a motorcycle accident that occurred on State Highway 361 in Port Aransas, Nueces County, Texas. The decedent was driving a 2007 Harley Davidson Electra Glide motorcycle when a Ford F-150 truck veered into the decedent's lane of travel. The decedent attempted to avoid the collision by moving toward the shoulder and applying his brakes; however, the rear tire locked up, the motorcycle went down, the decedent became separated from the motorcycle, and the decedent suffered fatal injuries in skidding across the pavement. The Simpsons originally filed suit against several parties, but at this point in the litigation, TxDOT is the only remaining defendant in the lawsuit.[2]

The Simpsons asserted, inter alia, that the fatality was caused by a defective condition of real property that TxDOT knew about but failed to warn travelers of and failed to repair. According to the Simpsons, the roadway was in a defective condition because

---

[2] TxDOT has alleged that the negligence of other parties caused or contributed to the crash, including Kyle Matthew Jones, the driver of the Ford F-150; Harley-Davidson Motor Company Group, LLC; and DQ Partners of Dallas, LLC d/b/a Dream Machines of Texas.

2

it was subject to "polishing." The Simpsons asserted that "polishing" is a special roadway defect caused by years of travel and increased traffic that results in a decrease in the coefficient road friction. The Simpsons assert that the deteriorated roadway surface prevented the use of a proper braking distance and exacerbated the tendency of vehicles on the roadway to skid. The Simpsons alleged that TxDOT knew about the defect and was aware of multiple deaths on that stretch of the highway resulting from the defect, but nevertheless failed to repair the defect.

During the pendency of the lawsuit, the Simpsons requested that TxDOT produce, among other things, roadway data compiled on State Highway 361 under the PMIS program, including skid testing data. TxDOT objected to the discovery of this data on grounds that it was privileged pursuant to 23 U.S.C. § 409, and therefore not subject to discovery *See id.*

In separate proceedings, the Simpsons sought the foregoing data from TxDOT through the Open Records Division of the Office of the Attorney General (OAG). The OAG ruled that TxDOT could withhold the information from an open records request based on the statutory privilege. The OAG's written ruling stated in part as follows:

> Federal courts have stated [§] 409 excludes from evidence data compiled for purposes of highway and railroad crossing safety enhancement and construction for which a state receives federal funding, in order to facilitate candor in administrative evaluations of highway safety hazards and to prevent federally required record-keeping from being used for purposes of private litigation. . . .
>
> TxDOT states the highway at issue is part of the National Highway System under [§] 144 of [T]itle 23 of the United States Code and is, therefore, a federal-aid highway for purposes of [§] 409. TxDOT further informs us the information at issue is used for highway safety purposes. Upon review, we conclude TxDOT may withhold the submitted information pursuant to

3

[§] 409 of title 23 of the United States Code. 23 U.S.C. § 409.

Subsequently, in the underlying proceedings, the Simpsons filed a motion to compel the requested data. TxDOT filed a response to the Simpsons' motion to compel and a motion for protective order to prevent the disclosure of PMIS data under 23 U.S.C. § 409. The Simpsons filed a reply to TxDOT's response and TxDOT thereafter responded to their reply.

The trial court held a non-evidentiary hearing on this matter on April 29, 2021. On June 23, 2021, the trial court granted the Simpsons' motion to compel, overruled TxDOT's objections based on 23 U.S.C. § 409, and ordered TxDOT to produce responsive documents "including all responsive roadway data and [information] gathered on the subject roadway and skid data testing programs."

This original proceeding ensued. By three issues, TxDOT asserts that (1) its PMIS data is privileged by 23 U.S.C. § 409; (2) the trial court abused its discretion by determining TxDOT's PMIS data was not protected under 23 U.S.C. § 409 and ordering its production; and (3) TxDOT is entitled to mandamus relief because it lacks an adequate remedy by appeal.

This Court requested and received a response to the petition for writ of mandamus from the Simpsons. *See* TEX. R. APP. P. 52.2, 52.4, 52.8. The Simpsons argue that TxDOT did not meet its burden to show that the data is privileged because it was not collected for the purposes of obtaining federal funds for a highway improvement project. According to the Simpsons, the information that they requested was used as part of routine maintenance, and thus, the statutory privilege does not apply. The Simpsons assert that

4

the statutory "privilege is not global and TxDOT failed to show the information requested is related to a federally funded project."

In reply, TxDOT asserts that the data is protected because it was compiled or collected pursuant to the statute for the purpose of developing highway safety construction improvement projects which may be implemented using federal-aid highway funds.

## II. MANDAMUS

"Mandamus relief is an extraordinary remedy requiring the relator to show that (1) the trial court clearly abused its discretion and (2) the relator lacks an adequate remedy on appeal." *In re Acad., Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding); *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36, 138 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

"The trial court abuses its discretion by ordering discovery that exceeds that permitted by the rules of procedure." *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam); *see In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding). It is an abuse of discretion to compel the production of privileged documents. *In re Silver*, 540 S.W.3d 530, 538 (Tex. 2018) (orig. proceeding). "[A] party will not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error." *Walker*, 827 S.W.2d at 843. When the trial court erroneously orders the production of privileged documents, the party claiming the privilege lacks an adequate remedy by appeal. *In re Silver,* 540 S.W.3d at 538; *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 279 (Tex. 2016) (orig.

proceeding); *In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 256 (Tex. 2005) (orig. proceeding).

### III. DISCOVERY

The trial court has broad discretion to determine the scope of discovery. *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 247 (Tex. 2021) (orig. proceeding); *see In re Nat'l Lloyds Ins.*, 532 S.W.3d 794, 802 (Tex. 2017) (orig. proceeding) ("A trial court generally has discretion to determine the scope of discovery."). The scope of discovery extends to "any matter that is not privileged and is relevant to the subject matter of the pending action." TEX. R. CIV. P. 192.3(a); *see In re USAA Gen. Indem. Co.*, 624 S.W.3d at 787. Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. *See* TEX. R. EVID. 401. We liberally construe relevance in determining the scope of discovery. *See In re Nat'l Lloyds Ins.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (per curiam) (stating that we "broadly" construe relevance in determining the scope of discovery).

### IV. PRIVILEGE

This proceeding concerns the discovery of allegedly privileged documents. "Privileges are not favored in the law and are strictly construed." *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 701 (Tex. 2015) (orig. proceeding) (quoting *Jordan v. Ct. App. for the Fourth Sup. Jud. Dist.*, 701 S.W.2d 644, 647 (Tex.1985) (orig. proceeding)); *see In re Christus Santa Rosa Health Sys.*, 492 S.W.3d at 280. "Whether a discovery privilege applies is a matter of statutory construction." *In re Christus Santa Rosa Health*

6

*Sys.*, 492 S.W.3d at 280; *see In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d at 700–01. "Statutory construction is a question of law we review de novo." *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d at 700. We also apply a de novo review to the trial court's legal conclusions, including its interpretation of a federal statute, as in this case, since an error of law or an erroneous application of law to facts is always an abuse of discretion. *In re Facebook, Inc.*, 625 S.W.3d 80, 86 (Tex. 2021) (orig. proceeding). When construing a statute, we look to the plain language to determine the intent of the Legislature. *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 540 (Tex. 2021); *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d at 279–80.

We apply a burden shifting scheme to determine the application of a privilege. *See In re Christus Santa Rosa Health Sys.*, 492 S.W.3d at 279. The party asserting the privilege must establish a prima facie case in support of the privilege by testimony or affidavit. *See id.*; *In re Mem'l Hermann Hosp.*, 464 S.W.3d at 698. If the party asserting the privilege establishes a prima facie case for the privilege and "tenders documents to the trial court, the trial court must conduct an in camera inspection of those documents before deciding to compel production." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam). If the party asserting a privilege presents a prima facie case that the documents are privileged, the burden shifts to the party seeking production to prove that an exception to the privilege applies. *See In re Christus Santa Rosa Health Sys.*, 492 S.W.3d at 279; *In re Park Cities Bank*, 409 S.W.3d 859, 868–69 (Tex. App.—Tyler 2013, orig. proceeding); *In re Small*, 346 S.W.3d 657, 662–63 (Tex. App.—El Paso 2009, orig. proceeding).

7

## V.     23 U.S.C. § 409

This original proceeding concerns the interpretation of a federal statute which protects traffic-hazard data that is compiled or collected by the state pursuant to federal highway safety programs from being the subject of discovery or being used as evidence in federal and state court proceedings. *See* 23 U.S.C. § 409. The section of the statute at issue is entitled "Discovery and admission as evidence of certain reports and surveys" and provides:

> Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 148 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

*Id.* The sections of Title 23 referenced in this statute concern Railway-Highway Crossings in § 130, National Bridge and Tunnel Inventory and Inspection Standards in § 144, and, relevant to this case, the Highway Safety Improvement Program in § 148. *See* 23 U.S.C. §§ 130, 144, 148.

## A.     Background

The United States Supreme Court upheld the constitutionality of 23 U.S.C. § 409 in *Pierce County, Wash. v. Guillen*, 537 U.S. 129, 148 (2003). In *Pierce*, the Court explored the background and purpose of the statute. *See id.* at 133–36. The Court explained that, beginning in the late 1960s, "Congress has endeavored to improve the

8

safety of our Nation's highways by encouraging closer federal and state cooperation with respect to road improvement projects." *Id.* at 133. Thus, Congress established several federal programs to assist the States in identifying and evaluating roads and highways in need of safety improvements and to provide funding for those projects. *Id.* (citing 23 U.S.C. § 130 (Railway-Highway Crossings), § 144 (National Bridge and Tunnel Inventory and Inspection Standards), and § 152 (Hazard Elimination Program)).

The Court explained that one of those programs, the Hazard Elimination Program,[3] required any state that wants federal funds for safety improvement projects to "undertake a thorough evaluation of its public roads." *Pierce*, 537 U.S. at 133. Shortly after the program was adopted, the States objected to the lack of confidentiality regarding their compliance measures because "the States feared that diligent efforts to identify roads eligible for aid under the [p]rogram would increase the risk of liability for accidents that took place at hazardous locations before improvements could be made." *Id.* at 134. Thus, the United States Department of Transportation recommended the adoption of legislation preventing the disclosure of information compiled in connection with the program. *Id.*

In 1987, Congress responded by enacting § 409. *Id.* The statutory language is expansive in scope, precluding the admission of specified documents into evidence "in Federal or State court or considered for other purposes in any action for damages." *Id.* The statute protects a broad range of records generated pursuant to §§ 130 and 144 of

---

[3] When *Pierce* was decided, 23 U.S.C. § 409 contained internal references to §§ 130, 144, and 152 of Title 23 of the United States Code. *See Pierce County, Wash. v. Guillen*, 537 U.S. 129, 135–36 (2003) (construing a former version of 23 U.S.C. § 409). Section 152 of Title 23 was later amended and is now codified at § 148. Section 409 reflects this change and references the amended statute. We refer to the current section, § 148, in our analysis.

Title 23 of the United States Code, in addition to the Hazard Elimination Program at § 148. *Id.* The statute also protects the specified types of records if they were compiled or collected for "the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds." *Id.* In 1991, Congress amended § 409 to further broaden the scope of its protections by making it applicable to pretrial discovery. *Id.* at 135. In 1995, Congress expanded the statutory language by adding the phrase "or collected" after the word "compiled." *Id.*

**B.      Interpretation**

In upholding 23 U.S.C. § 409 against a constitutional challenge, the United States Supreme Court concluded that this section "protects not just the information an agency generates" or compiles for the stated purposes, but "also any information that an agency collects from other sources" for those purposes. *Id.* at 145. In contrast, the statutory privilege is "inapplicable to information compiled or collected for purposes unrelated" to the stated purposes "and held by agencies that are not pursuing [the stated] objectives." *Id.* at 145–46.

This section is "not intended to be an effort-free tool in litigation against state and local governments," and it is similarly not intended "to make plaintiffs worse off than they would have been had § 152 funding never existed." *Id.* at 131.

> Put differently, there is no reason to interpret § 409 as prohibiting the disclosure of information compiled or collected for purposes unrelated to § [148], held by government agencies not involved in administering § [148], if, before § [148] was adopted, plaintiffs would have been free to obtain such information from those very agencies.

*Id.* at 146.

The statutory privilege "clearly has two parts." *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 181 (3d Cir. 2013). The first part encompasses "reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings" pursuant to the specified sections of Title 23; that is, sections 130, 144, and 148. 23 U.S.C. § 409. *See id.* at 180–81. Courts have rejected any "hyper-technical" constructions of this provision that would limit the categories of data to those specifically expressed in the statute. *See Ford v. City of Los Angeles*, 260 Cal. Rptr. 3d 665, 671 (Cal. App. Dep't Super. Ct. (2020) (applying the privilege to an "application" for Highway Safety Improvement Program funds pursuant to § 409); *Carson v. CSX Transp., Inc.*, 400 S.C. 221, 232, 734 S.E.2d 148, 154 (2012) (collecting cases regarding the exclusion of testimony under § 409). The second part of the statute encompasses such documents only if they were compiled or collected "for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds." 23 U.S.C. § 409; *see Zimmerman*, 706 F.3d at 181. The second part has been interpreted narrowly to protect only those documents that were collected "with the intent to use [them] for a particular construction project," but not those documents collected with the general intent that someone might eventually use that data "to improve highway safety in a later construction project." *Zimmerman*, 706 F.3d at 184; *see also Ross v. Burlington N. & Santa Fe Ry. Co.*, 63 F. Supp. 3d 1330, 1333 (W.D. Okla. 2014).

**C.    Analysis**

As stated previously, TxDOT contends that the discovery is privileged, whereas the Simpsons assert that the privilege is inapplicable because the data "was used as part of routine maintenance and not collected for the purpose of developing an improvement project based on the application for or use of federal funds." TxDOT supported its response to the Simpsons' motion to compel with numerous exhibits, including the affidavit of Jenny Li, the Director of TxDOT's Pavement Asset Management Section. Li is a licensed professional engineer who has worked for TxDOT for more than thirteen years. As part of her employment with TxDOT, Li provides the Federal Highway Safety Administration with data collected in connection with the federally funded programs that she oversees.

Li explained that TxDOT is headed by the Texas Transportation Commission, which applies, on behalf of TxDOT and the State of Texas, for grants from the federal government under various programs. Li stated that to "receive such grants, TxDOT is required to comply with the conditions and limitations provided for in said programs." Li testified that in order to "qualify for federal funds and to get federal approval for highway safety improvement projects, TxDOT is required to, and has developed, a comprehensive Highway Safety Improvement Program (HSIP) which is overseen by TxDOT's Traffic Safety Division." Li further asserted that through its Maintenance Division, TxDOT operates the PMIS program. She stated that the "PMIS program determines, by testing and observation, various characteristics of pavement types and collects data on differing distress types as well as skid data," and the "PMIS data is then used by each of TxDOT's

12

twenty-five Districts, along with other available data such as crash records, to recommend HSIP projects through the Traffic Safety Division." She averred that the "use of such data includes: the development of 'State Strategic Highway Safety Plans,' as that term is defined in Title 23 United States Code [§] 148(a)(11); development of projects in furtherance of the HSIP's goals; and identification and reduction of highway safety problems."

Li, who has overseen the PMIS program since 2017, further testified in relevant part that:

> TxDOT's testing and inventorying of pavement conditions under TxDOT's PMIS program, including skid properties, is conducted to obtain various federal-aid highway funds under certain federal programs, including but not limited to the HSIP (pursuant to 23 [U.S.C.] § 148), the Surface Transportation Program (STP) (pursuant to 23 [U.S.C.] § 133) and the National Highway Performance Program (NHPP) (pursuant to 23 [U.S.C.] § 119).
>
> . . . .
>
> The ultimate goal or purpose for gathering such PMIS information is so that direction can be given to engineers in various districts or areas to help enhance the safe operation of the State's highway system by developing highway construction projects. The goal has been to develop a database to help lead to a coordinated approach to develop HSIP projects and to reduce the severity and frequency of accidents. The PMIS information is gathered for the purpose of identifying, evaluating, or planning the safety enhancement of state highways like SH 361, and as a starting point for the development of highway construction projects. The data is collected and compiled pursuant to Texas's HSIP, a federally funded program, for the purpose of complying with federal law.

The Simpsons assert that Li's affidavit does not support the application of the statutory privilege because her affidavit asserts a "global privilege" under which "everything is privileged because it concerns safety in general and it may be used in future projects."

13

They further allege that the privilege is inapplicable because the PMIS data was not "gathered in relation to any particular federally funded project."

The Simpsons' argument fails to consider that the statutory privilege "clearly has two parts." *Zimmerman*, 706 F.3d at 181. Under the first part of § 409, the privilege applies to data which is "compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites [or] hazardous roadway conditions" pursuant to § 148. Li specifically stated that TxDOT's testing and inventorying of pavement conditions under TxDOT's PMIS program, including skid properties, "is conducted to obtain various federal-aid highway funds under certain federal programs, including but not limited to the HSIP (pursuant to 23 U.S.C. § 148)." Thus, based on Li's affidavit, we conclude that TxDOT has met its burden of pleading and producing evidence establishing a prima facie case in support of the application of the statutory privilege et forth in the first part of § 409. *See In re Christus Santa Rosa Health Sys.*, 492 S.W.3d at 279; *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d at 698. And the record before this Court contains no evidence that any exception to the privilege is applicable in this case. *See In re Christus Santa Rosa Health Sys.,* 492 S.W.3d at 279; *In re Mem'l Hermann Hosp.*, 464 S.W.3d at 698.

We conclude that TXDOT's PMIS data is privileged by 23 U.S.C. § 409, and the trial court abused its discretion by determining otherwise. Accordingly, we sustain TxDOT's first two issues. We further conclude that TxDOT lacks an adequate remedy by appeal. *See In re Silver*, 540 S.W.3d at 538; *Walker*, 827 S.W.2d at 843. We sustain TxDOT's third and final issue.

14

## VI.    CONCLUSION

The Court, having examined and fully considered TxDOT's petition for writ of mandamus, the Simpsons' response, TxDOT's reply, and the applicable law, is of the opinion that TxDOT has met its burden to obtain mandamus relief. We lift the stay previously imposed in this case. *See* TEX. R. APP. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). We direct the trial court to vacate its order of June 23, 2021, and to proceed in accordance with this opinion. Our writ will issue only if the trial court fails to comply.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
14th day of December, 2021.

15