**IN RE: DISH NETWORK, LLC, and Echosphere, LLC, Relators.**

No. 08-16-00300-CV

Court of Appeals of Texas, El Paso.

June 30, 2017

RESPONDENT: Honorable Luis Aguilar, Judge, 243rd District Court, 500 E. San Antonio, El Paso, TX 79901.

ATTORNEY FOR REAL PARTY IN INTEREST: Hon. John P. Mobbs, Attorney at Law, 7170 Westwind Dr., Ste. 201, El Paso, TX 79912.

ATTORNEY FOR RELATORS: Hon. David Michael Noll, 820 Gessner, Suite 940, Houston, TX 77024.

Before McClure, C.J., Rodriguez, and Palafox, JJ.

## OPINION

YVONNE T. RODRIGUEZ, Justice

Relators, DISH Network, LLC and Echosphere, LLC (referred to collectively as DISH), have filed a mandamus petition against the Honorable Luis Aguilar, Judge of the 243rd District Court of El Paso County, Texas, to challenge an order compelling discovery of documents allegedly protected by the attorney-client and work product privileges. DISH also challenges the trial court's refusal to rule on the motion to compel arbitration until after the challenged discovery has been completed. We conditionally grant mandamus relief.

## FACTUAL SUMMARY

Yvette Delgado was employed by DISH on December 17, 2007, and she worked as the Human Resources Manager until her termination on August 25, 2015. In this capacity and during the same period, Delgado communicated with DISH's outside counsel, Hagan Noll & Boyle (HNB), in employment-related lawsuits brought against DISH. Delgado was not a named party, and there is no evidence that she was a potential party in any of these suits. Delgado also assisted HNB by gathering documents and information in response to discovery requests, setting up meetings for HNB with fact witnesses, assisting counsel with factual investigation into claims and defenses, and coordinating the attendance of witnesses at depositions and trial. Delgado testified by deposition as a fact witness in one arbitration proceeding, *Nadia Barrera v. Echosphere, L.L.C.*, cause number 01-14-0001-1552. HNB attended that deposition on behalf of DISH. She never testified as a witness in any trial or arbitration proceeding defended by HNB. Likewise, she never sat as a corporate representative of DISH in any trial or arbitration defended by HNB.

On July 20, 2016, Delgado filed suit against DISH alleging claims for discrimination and retaliation.[1] DISH's counsel, HNB, sent a letter to Delgado's counsel regarding an arbitration agreement signed by Delgado when she was hired by Dish. Delgado's attorney responded that a conflict of interest may exist between Delgado and HNB. DISH sent a letter to Delgado's counsel asserting that there was no attorney-client relationship between Delgado and HNB or a substantial relationship between Delgado's prior interactions with

1. The underlying case is styled *Yvette Delgado v. Dish Network, LLC and Echosphere, LLC* (cause number 2016DCV2745) and is pending in the 243rd District Court of El Paso County, Texas.

HNB and her claims against DISH. DISH filed a motion to compel arbitration and set it for a hearing on September 15, 2016.

A few days later, Delgado served DISH with requests for production seeking the following:

1. Any and all documents, notes, emails, messages, memoranda, pleadings or other documents that relate to any pleadings filed by Defendants' counsel in any case where Plaintiff was identified as a witness, a corporate representative, employee or otherwise provided any statements or testimony, including but not limited to any depositions, statements, affidavits, correspondence, emails or other documents that involve Plaintiff.

2. Any and all documents, notes, emails, memoranda or other documents exchanged between Plaintiff and David Noll, Stephanie Waller or any other lawyers affiliated with Mr. Noll's law firm, employed by the same law firm or associated with Mr. Noll or his law firm, including but not limited to any email correspondence, messages, pleadings or other documents.

Delgado filed a written objection to the hearing on the motion to compel arbitration and asked the trial court to continue the hearing and permit discovery on the issue of disqualification of HNB. At the hearing on September 15, 2016, the trial court heard DISH's motion to compel arbitration, but the court did not issue a ruling either granting or denying the motion. The court instead granted Delgado's objection to hearing the motion to compel arbitra-

tion prior to the completion of discovery regarding disqualification of HNB.

DISH filed a response to Delgado's requests for production regarding disqualification asserting objections based on attorney-client privilege, work product doctrine, and confidentiality agreements. The response included a declaration prepared by James M. McCormack [2] expressing his opinion that an attorney-client relationship did not exist between HNB and Delgado, and therefore, HBN had an ethical obligation to assert the attorney-client privilege and resist discovery by all lawful means. DISH also filed a motion for protective order with respect to the discovery requests. DISH subsequently served Delgado with an affidavit by HNB attorney, Stephanie Waller, in support of its objections to the discovery requests, and it filed a privilege log. DISH also produced non-privileged documents and a transcript of Delgado's deposition testimony given in the *Barrera v. Echosphere* arbitration proceeding. Following a hearing, the trial court granted Delgado's motion and entered an order compelling discovery of documents which DISH claims are protected by the attorney-client and work product privileges.

## PROTECTED DOCUMENTS AND COMMUNICATIONS

In its first issue, DISH contends that the trial court clearly abused its discretion by ordering production of documents and communications protected by the attorney-client privilege and work product doctrine.

---

**2.** Mr. McCormack served as the General Counsel and Chief Disciplinary Counsel of the State Bar of Texas from 1991-1996, and he is a past Chairman of the Texas Center for Legal Ethics and Professionalism, and was a member of the Texas Disciplinary Rules of Professional Conduct Committee of the State Bar of Texas. Mr. McCormack is presently serving as the Editor-in-Chief of the EthicsExchange of the Texas Center for Legal Ethics, and in 2015, the Texas Supreme Court appointed him to the Texas Professional Ethics Committee, which prepares and publishes opinions regarding legal ethics for the guidance of Texas lawyers.

Delgado responds that the communications are subject to the joint representation exception to the attorney-client privilege.

### Standard of Review

 To be entitled to mandamus relief, a relator must generally meet two requirements. First, the relator must show that the trial court clearly abused its discretion. *In re Prudential Insurance Company of America*, 148 S.W.3d 124, 135 (Tex. 2004). A trial court abuses its discretion when it acts arbitrarily, capriciously, and without reference to guiding principles. *In re Green*, 527 S.W.3d 277, 278–80, 2016 WL 7031055, at *2 (Tex.App.—El Paso December 2, 2016, orig. proceeding); *In re Mid-Century Insurance Company of Texas*, 426 S.W.3d 169, 178 (Tex.App.—Houston [1st Dist.] 2012, orig. proceeding). Mandamus relief is available when the trial court erroneously orders the disclosure of privileged information because appeal does not provide an adequate remedy. *See In re Christus Santa Rosa Health System*, 492 S.W.3d 276, 279 (Tex. 2016); *In re E.I. DuPont de Nemours & Company*, 136 S.W.3d 218, 223 (Tex. 2004).

### Attorney-Client Privilege and Work Product Doctrine

Under Rule 503(b)(1), a client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client. TEX.R.EVID. 503(b)(1). The attorney-client privilege protects these confidential communications between a client or the client's representative and the lawyer. TEX.R.EVID. 503(b)(1)(A). This priv-

ilege protects not only the communications between the lawyer and client, but also communications between their representatives. TEX.R.EVID. 503(b); *In re Fairway Methanol LLC*, 515 S.W.3d 480, 487-88 (Tex.App.—Houston [14th Dist.] 2017, orig. proceeding). Rule 503's definition of "client's representative" includes any person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client. TEX.R.EVID. 503(a)(2)(B); *see also* TEX.DISCIPLINARY R. PROF. CONDUCT 1.12, *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013)(Tx. State Bar R. art. X, § 9)("A lawyer employed or retained by an organization represents the entity.").[3]

Rule 192.5 protects an attorney's work product from discovery. *See* TEX.R.CIV.P. 192.5(b). The protection extends to materials developed and communications made in anticipation of litigation or for trial for or by a party or its representatives, including the party's attorneys, employees, and agents. *See* TEX.R.CIV.P. 192.5(a).

 The party resisting discovery bears the burden of proving an applicable privilege. *In re E.I. DuPont de Nemours & Company*, 136 S.W.3d at 223, 225. The party asserting a privilege must establish by testimony or affidavit a *prima facie* case for the privilege. *In re Christus*, 492 S.W.3d at 279-80; *In re Memorial Hermann Hospital System*, 464 S.W.3d 686, 698 (Tex. 2015). If the party carries its burden of establishing a *prima facie* case that the documents are privileged, the bur-

---

**3.** Comment 1 provides further guidance: "A lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents. Unlike individual clients who can speak and decide finally and authoritatively for themselves, an organization can speak and decide only through its agents or constituents such as its officers or employees." TEX.DISCIPLINARY R. PROF. CONDUCT 1.12.

den shifts to the party seeking production to prove that an exception to the privilege applies. *In re Christus*, 492 S.W.3d at 279-80.

### The Evidence—Waller's Affidavit

Delgado's discovery requests sought the production of any and all communications with DISH's outside counsel, HNB. She also sought to discover documents, including emails and notes, exchanged between Delgado and David Noll, Stephanie Waller, or any other HNB attorney. DISH submitted the affidavit of HNB attorney, Stephanie Waller, in support of its assertion that the withheld discovery is protected by the attorney-client privilege and work product doctrine.

According to the affidavit, HNB has acted as outside litigation counsel for DISH on various employment-related lawsuits, and during the course of this representation, HNB has interacted and communicated with many DISH personnel, including Delgado, "in order to gain relevant facts and documents, confer with witnesses, and generally support the defense of litigation claims asserted against DISH." Waller averred that HNB engaged with Delgado in her capacity as human resources manager for DISH and its interactions and communications were for the sole purpose of rendering legal services to DISH. Waller reviewed all communications between Delgado and outside counsel that are within HNB's possession, and she concluded that all of these communications were made solely in HNB's capacity as outside counsel for DISH in pending or threatened litigation and in Delgado's capacity as human resources manager for DISH.

Waller stated in her affidavit that during the course of providing legal services to DISH, documents containing confidential attorney-client communications and attorney work product were generated. She identified nineteen cases that the withheld documents and communications were associated with and described the nature of the communications as follows:

Gutierrez v. Echosphere (Nos. 1-10) Four email chains involving confidential communications with outside counsel regarding employee file and factual investigation into claims and defenses in ongoing litigation against DISH. (9/24/08-10/14/08)

Sias v. Echosphere (Nos. 11-58, 249) Twenty-one email chains involving confidential communications with outside counsel regarding arranging meetings with fact witnesses; obtaining documents and information in response to discovery; and preparation for trial in ongoing litigation against DISH. (10/17/08-4/17/09)

Leon v. Echosphere (Nos. 59-78) Eight email chains involving confidential communications with outside counsel regarding factual investigation into claims and defenses in ongoing litigation against DISH. (5/25/08-1/16/09)

Barrientos v. Echosphere (Nos. 79-111, 254) Thirteen email chains involving confidential communications with outside counsel regarding arranging meetings with fact witnesses; obtaining documents and information in response to discovery; and preparation for trial in ongoing litigation against DISH. (10/27/08-7/21/09)

Ugarte v. Echosphere (Nos. 112-152) Fifteen email chains involving confidential communications with outside counsel regarding witnesses attending depositions and hearing; obtaining documents and information requested in response to discovery; confer with Delgado regarding verifying interrogatories; factual investigation into claims and defenses, and preparation for trial in ongoing litigation against DISH. (5/19/11-9/25/12)

Trillo v. Echosphere (Nos. 153-182) (Nos. 153-187) Thirteen email chains involving confidential communications with outside counsel regarding witnesses attending depositions and hearing; documents and information requested in response to discovery; factual investigation into claims and defenses, and preparation for trial in ongoing litigation against DISH. (9/16/10-4/25/13)

Martinez v. Echosphere (Nos. 188-191) One email chain involving confidential communications with outside counsel regarding obtaining documents and information in response to discovery requests. (11/3/10)

Perez v. DISH (Nos. 192-223) Twelve email chains involving confidential communications with outside counsel regarding obtaining documents and information in response to discovery requests; conferring with Delgado regarding verifying interrogatories and attending hearing as corporate representative; arranging meetings with fact witnesses; factual investigations into claims and defenses; and preparation for trial in ongoing litigation against DISH. (3/3/14-5/5/15)

Villa v. DISH (Nos. 224-248) Eight email chains involving confidential communications with outside counsel regarding obtaining documents and information in response to discovery requests; witnesses attending depositions; arranging meetings with witnesses; conferring with Delgado regarding verifying interrogatories and attending hearing as corporate representative; factual investigations into claims and defenses; and preparation for trial in ongoing litigation against DISH. (5/1112-5/23/14)

Altamirano v. DISH (Nos. 250-253, 372-375) Five email chains involving confidential communications with outside counsel regarding obtaining personnel documents and contacting witnesses in ongoing litigation against DISH. (10/28/14-6/11/15)

Reyes v. Echosphere (Nos. 255, 312-356) Sixteen emails involving confidential communications with outside counsel regarding obtaining documents and information in response to discovery requests; witnesses attending depositions; arranging meetings with fact witnesses; factual investigations into claims and defenses; drafting affidavit for Delgado; conferring with Delgado regarding attending mediation as DISH's representative; and preparation for trial in ongoing litigation against DISH. (2/2/11-2/24/15)

Nadeau v. Echosphere (Nos. 256-279) Twelve emails involving confidential communications with outside counsel regarding obtaining documents and information in response in support of claims and defenses; arranging meetings with witnesses; factual investigations into claims and defenses; drafting declaration for Delgado; conferring with Delgado regarding attending mediation as DISH's representative; and preparation for trial in ongoing litigation against DISH. (9/8/11-11/13/13)

Guzman v. DISH (Nos. 280-298) Seven emails involving confidential communications with outside counsel re: obtaining documents and information in response to discovery requests; confer with Delgado regarding verifying interrogatories and attending hearing as corporate representative; arranging meetings with witnesses; factual investigations into claims and defenses; and preparation for trial in ongoing litigation against DISH. (11/25/13-9/15/14)

Barrera v. Echosphere (Nos. 299-311) Six email chains confidential communications with outside counsel re: obtaining

documents and information in response to discovery requests; conferring with Delgado regarding verifying interrogatories and attending deposition; witnesses attending depositions; arranging meetings with witnesses; factual investigations into claims and defenses; and preparation for trial in ongoing litigation against DISH. (10/27/14-4/22/15)

Ciriza v. DISH (Nos. 357-371) Nine email chains confidential communications with outside counsel re: obtaining documents and information in response to discovery requests; conferring with Delgado regarding verifying interrogatories and attending hearing as corporate representative; arranging meetings with witnesses; factual investigations into claims and defenses; and preparation for trial in ongoing litigation against DISH. (10/1/13-12/10/14)

Rodriguez v. DISH (Nos. 376-379) One email chain regarding request for information on internal transfer documentation in ongoing litigation against DISH. (11/5/13-5/27/14)

Ayala v. DISH (Nos. 380-381) One email chain regarding requesting identification of documents in ongoing litigation against DISH. (10/11/11)

Fernandez v. Echosphere (Nos. 382-383) One email chain regarding contact information for former employee in ongoing litigation against DISH. (5/16/11)

Hoover v. DSH (Nos. 384-385) One email chain regarding identifying plaintiff's work site in ongoing litigation against DISH. (9/9/10).

Delgado was not a named party in any of these lawsuits and no claims were ever asserted or threatened against Delgado in connection with these cases. Delgado was deposed as a fact witness in one arbitration proceeding, *Nadia Barrera v. Echosphere, L.L.C.*, cause number 01-14-0001-1552, but she never testified as a witness in any trial or arbitration proceeding defended by HNB. Likewise, she never sat as a corporate representative of DISH in any trial or arbitration proceeding defended by HNB.

■ According to Waller, none of the communications that are within HNB's possession contain confidential information divulged by Delgado concerning any personal matter of Delgado, including her own employment with DISH. Waller specifically stated that Delgado has never retained HNB for any purpose whatsoever, HNB has not rendered any personal legal advice or services to Delgado, and Delgado has not requested such advice or services from HNB. Waller's affidavit established that all of the withheld communications were exchanged between DISH's outside counsel and DISH's representatives or agents, including Delgado, for the purpose of facilitating the rendition of professional legal services to DISH and were prepared in anticipation of litigation or trial. Consequently, DISH carried its burden of establishing a *prima facie* case that the withheld documents and communications are protected by the attorney-client privilege and the work product doctrine. *See In re E.I. DuPont de Nemours*, 136 S.W.3d at 225-26 (finding paralegal's affidavit sufficient to establish a *prima facie* case of privilege where affidavit showed that all communications with client or client representative were regarding professional legal services or was material prepared or mental impressions developed in anticipation of litigation or trial by or for the client or its representatives); *In re Toyota Motor Corporation*, 94 S.W.3d 819, 821-24 (Tex. App.—San Antonio 2002, orig. proceeding)(affidavit which showed that documents were communications to Toyota counsel for the purpose of requesting legal advice or facilitating the rendition of professional legal service was sufficient to es-

tablish a *prima facie* case of privilege). The burden shifted to Delgado to establish an exception to the attorney-client privilege. *See In re Christus*, 492 S.W.3d at 279-80.

*Joint Client Exception*

Delgado asserts that she is entitled to the privileged documents under the joint client exception established by Texas Rule of Evidence 503(d)(5). This rule provides that the attorney-client privilege does not apply:

If the communication:

(A) is offered in an action between clients who retained or consulted a lawyer in common;

(B) was made by any of the clients to the lawyer; and

(C) is relevant to a matter of common interest between the clients.

Tex.R.Evid. 503(d)(5).

■■■ The attorney-client relationship is a contractual relationship whereby an attorney agrees to render professional services for a client. *In re Baytown Nissan Inc.*, 451 S.W.3d 140, 145-46 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *Bright v. Addison*, 171 S.W.3d 588, 596 (Tex.App.—Dallas 2005, pets. denied). The relationship may be expressly created through a contract or it may be implied from the actions of the parties. *Greene's Pressure Treating & Rentals, Inc. v. Fulbright & Jaworski, L.L.P.*, 178 S.W.3d 40, 43 (Tex.App.—Houston [1st Dist.] 2005, no pet.); *Bright*, 171 S.W.3d at 596. In order for the contractual relationship to exist, the parties must explicitly or implicitly manifest an intention to create an attorney-client relationship. *Parker v. Carnahan*, 772 S.W.2d 151, 156 (Tex. App.—Texarkana 1989, writ denied). The determination of whether an attorney-relationship can be implied is based on an objective standard, and a court is required to examine what the parties said and did rather than their subjective beliefs. *See Span Enterprises v. Wood*, 274 S.W.3d 854, 858 (Tex.App.—Houston [1st Dist.] 2008, no pet.); *Bright*, 171 S.W.3d at 596. A court cannot consider a client's or attorney's unspoken subjective beliefs about the relationship. *In re Baytown Nissan Inc.*, 451 S.W.3d at 146.

■■■ There is no evidence that Delgado and HNB entered into an express contractual relationship whereby HNB agreed to represent Delgado personally in any case, including the nineteen cases identified in Waller's affidavit. The issue is whether there is an implied attorney-client relationship. Delgado on the following portions of her affidavit to establish that she and DISH were joint clients of HNB in the nineteen cases identified by Waller's affidavit:

I was previously employed by Dish Network/Ecosphere. During that time, there were a number of legal proceedings involving the company, including lawsuits and unemployment benefit claims.

When I was a witness in those suits, I would meet with the attorneys from the Hagan Noll & Boyle law firm, including David Noll and Stephanie Waller, to prepare to testify. They gave me advice and instruction, including telling me how to testify and how to answer specific questions. I understood that they were providing these legal services to me, not just to my employer.

At all times, it was my understanding that the lawyers represented me personally, not just the company I worked for. They never advised me that they were not my attorneys or that they did not represent me. They never advised me that they would later represent my employer against me if a dispute arose between us. I considered them my law-

yers, not just the lawyers for my employer.

When they were my lawyers, I discussed Dish Network/Ecosphere's employment policies and employment decisions with the lawyers in the Hagan Noll & Boyle law firm.

I object to my former lawyers representing the opposing party in this case, which is related to the same previous matters on which they represented me.

Delgado's statements that she "understood" or had an "understanding" that the HNB lawyers represented her personally are expressions of her subjective belief and cannot be considered when determining whether an implied attorney-client relationship existed. *See Kiger v. Balestri*, 376 S.W.3d 287, 291 (Tex.App.—Dallas 2012, pet. denied)(whether attorney-client agreement is express or implied, there must be evidence both parties intended to create attorney-client relationship; one party's subjective belief is insufficient to raise question of fact). Consequently, the Court must focus on the evidence showing what the parties said and did.

Delgado states in her affidavit that an attorney-client relationship was created when she testified as a witness in cases involving DISH because the HNB attorneys gave her advice and instruction regarding her testimony. Delgado does not identify the cases in which she allegedly testified as a witness. DISH presented evidence that Delgado never testified as a witness at a trial or arbitration proceeding, and she was deposed in only one arbitration proceeding which is not one of the nineteen cases identified in Waller's affidavit. Waller stated that she gave Delgado the same advice she gives to all DISH employees prior to being deposed: listen carefully to the question and asked and tell the truth. The evidence presented shows that Delgado was not a party or a potential

in any of those cases, and the HNB attorneys communicated with Delgado in her capacity as a human resources manager for DISH. Delgado's generalized and vague statement that the HNB attorneys gave her advice and instruction about her testimony as a DISH representative is insufficient to establish an implied attorney-client relationship.

Delgado also states that she discussed DISH's employment policies and employment decisions with the HNB lawyers. Again, the affidavit does not provide any specific facts regarding these conversations from which it could be concluded that an implied attorney-client relationship existed between Delgado and HNB. Delgado does not state that she discussed her own employment situation with the HNB attorneys. The record shows that HNB communicated with Delgado as a representative of DISH regarding anticipated and ongoing litigation. This evidence does not give rise to implied attorney-client relationship between HNB and Delgado.

In her response to the mandamus petition, Delgado asserts that one of the HNB attorneys admitted she represented Delgado at a deposition. Counsel stated at the hearing on the motion to compel arbitration that: "To the best of my knowledge, Ms. Delgado was in one deposition with our firm. I did represent her at that deposition on behalf of DISH." Other evidence shows that Delgado was not a party or potential party in any of the cases and her involvement was solely as a representative of DISH in the course and scope of her employment. Counsel's statement does not support a conclusion that an implied attorney-client relationship existed between HNB and Delgado personally. In the absence of any objective evidence that HNB and Delgado mutually intended to create an attorney-client relationship, Delgado failed to establish that the joint client ex-

ception to the attorney-client privilege applies. Consequently, the trial court clearly abused its discretion by granting the motion to compel discovery. Issue One is sustained.

## MOTION TO COMPEL ARBITRATION

In Issue Two, DISH argues that the trial court abused its discretion by permitting the challenged discovery rather than deciding the motion to compel arbitration. Delgado responds that the trial court acted properly by addressing the disqualification issue before ruling on the motion to compel arbitration.

Delgado is correct that a motion to disqualify should be resolved promptly, but Delgado did not file a motion to disqualify HNB. She instead raised the issue as an objection to the trial court hearing DISH's motion to compel arbitration. As a general rule, a motion to compel arbitration should be resolved without delay. *See In re Houston Pipe Line Company*, 311 S.W.3d 449, 451 (Tex. 2009)(orig. proceeding); *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268-69 (Tex. 1992) (orig. proceeding). When deciding a motion to compel arbitration under the Federal Arbitration Act, a Texas trial court applies Texas procedure. *In re Houston Pipe Line*, 311 S.W.3d at 451. Section 171.086 of the Civil Practice and Remedies Code permits discovery to be taken when it is needed before the arbitration or to permit the arbitration to be conducted in an orderly manner. TEX.CIV.PRAC.&REM.CODE ANN. § 171.086(a)(4), (6)(West 2011); *In re Houston Pipe Line*, 311 S.W.3d at 451. A trial court abuses its discretion if it defers ruling on a motion to compel arbitration until after the completion of discovery beyond that which is authorized. *See In re Houston Pipe Line*, 311 S.W.3d at 450. The Court has determined that the trial court abused its discretion by granting Delgado's motion to compel discovery on the disqualification issue when Delgado failed to offer any evidence that she had an express or implied relationship with HNB. Consequently, the trial court abused its discretion by deferring a ruling on the motion to compel arbitration until after the completion of the discovery sought by Delgado. Issue Two is sustained.

Having sustained both issues, we order Respondent to set aside his order granting Delgado's motion to compel discovery and to rule on DISH's motion to compel arbitration within thirty days from the date of this opinion. The writ of mandamus will issue only in the event Respondent fails to comply with this opinion.