

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN RE: | § | No. 08-22-00022-CV |
| | § | |
| DISH NETWORK L.L.C. and ECHOSPHERE L.L.C., | § | AN ORIGINAL PROCEEDING |
| | § | IN MANDAMUS |
| Relators. | § | |

## **O P I N I O N**

Relators, DISH Network L.L.C. and Echosphere L.L.C. (collectively, Dish), filed this writ of mandamus challenging an order of the Honorable Selena Solis, Judge of the 243rd Judicial District Court of El Paso, Texas. Judge Solis' order referred the underlying dispute to binding arbitration (a ruling not challenged) but also selected the arbitrator (the ruling that is challenged). Dish contends that the trial court lacked the discretion to designate the arbitrator under the terms of the arbitration agreement. For the following reasons, we deny the petition for writ of mandamus.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2016, real party in interest Yvette Delgado sued Dish, her former employers, for employment discrimination and retaliation under Chapters 21 and 451 of the Texas Labor Code. Dish responded by moving to compel arbitration and stay proceedings based on an arbitration

agreement (the Agreement) that Delgado signed during her employment with Dish.  After the parties engaged in several years of pretrial discovery disputes, Dish filed a supplemental motion to compel arbitration.[1]

As the case is now postured before us, the parties do not dispute that they agreed to arbitrate the disputes raised in Delgado's petition.   This dispute turns solely on how the arbitrator should be selected.   The arbitration agreement provides in pertinent part:

> The Employee agrees that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et. seq., and is fully enforceable…. The arbitration shall be governed by and construed in accordance with the substantive law of the State in which the Employee performs services for EchoStar as of the date of the demand for arbitration . . . .   A Single arbitrator engaged in the practice of law from the American Arbitration Association ("AAA") shall conduct the arbitration under the then current procedures of the AAA's National Rules for the Resolution of Employment Disputes . . .

The agreement has no other language that addresses how the arbitrator should be selected.

The transcripts of several hearings below (and references to another hearing that is not a part of our record), suggest that the parties made some attempt at agreeing between themselves on a designated arbitrator.   At one point the trial court proposed the names of several retired or former judges to serve as the arbitrator, including Chris Antcliff, a former appellate court justice and former trial court judge.   Dish's counsel, however, ultimately insisted that the parties follow the

---

[1] This is the fourth mandamus action arising from Delgado's termination.   *See In re DISH Network, LLC*, 528 S.W.3d 177, 186-87 (Tex.App.--El Paso 2017, orig. proceeding) (holding, in part, trial court erred in refusing to rule on motion to compel arbitration until discovery was completed); *In re DISH Network, L.L.C.*, 563 S.W.3d 433, 441 (Tex.App.--El Paso 2018, orig. proceeding) (holding the trial court abused its discretion in failing to quash a notice of deposition and permitting pre-arbitration discovery); *In re Dish Network, L.L.C.*, No. 08-18-00214-CV, 2019 WL 3940963, at *1 (Tex.App.--El Paso Aug. 21, 2019, orig. proceeding) (mem. op.) (denying mandamus relief in challenge to pre-arbitration discovery).   In the interest of brevity, we recount only the facts pertinent to the resolution of the limited issue raised here.

2

American Arbitration Association (AAA) selection process in which AAA lists potential arbitrators, and the parties then rank order the list after exercising strikes.[2]

It is clear from our record that the parties could not agree on who should arbitrate the dispute. When the trial court granted Dish's motion to compel arbitration and stay proceedings, she appointed Antcliff as the arbitrator.[3] Dish filed a motion for partial reconsideration of the trial court's order, questioning only the appointment of Antcliff as the arbitrator. Following a hearing on the motion, the trial court denied the motion by written order. The objection raised in that motion, and now on mandamus, has nothing to do with Antcliff's qualifications or ability to fairly arbitrate this dispute. Instead, Dish contends that the arbitration agreement requires that

[2] *See* American Arbitration Ass'n, Employment Arbitration Rules & Mediation Procedures, R-12(c) (amended and effective Nov. 1, 2009):

> If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:
>
> i. Shortly after it receives the Demand, the AAA shall send simultaneously to each party a letter containing an identical list of names of persons chosen from the Employment Dispute Resolution Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.
>
> ii. If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.
>
> iii. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists

[3] When Antcliff's name first came up, there was some question raised as to whether he was AAA certified. Delgado's counsel represented to the trial court that Antcliff is a certified AAA arbitrator. One of Dish's counsel did not dispute that claim, but could not confirm it. The trial court later explained that she confirmed with Antcliff that he was in fact AAA certified under the National Rules for Resolution of Employment Disputes.

AAA designate the arbitrator through its selection process, and that the trial court thus lacked discretion to make the appointment.

## II.  DISCUSSION

### A.  Standard of Review and Applicable Law

Mandamus is an extraordinary remedy.  *In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding).   To obtain mandamus relief, a relator must show that (1) a trial court has clearly abused its discretion, and (2) the relator has no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to analyze or apply the law correctly. *Id.* at 840; *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam); *In re ReadyOne Industries, Inc.*, 394 S.W.3d 697, 700 (Tex.App.--El Paso 2012, no pet.). "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred."  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).   We also explain the standard this way: the question is whether the trial court acted without reference to any guiding rules and principles.  *Id.* at 241-42

When an arbitration agreement provides the mechanism to select the arbitrator, the court must enforce that procedure.  *See Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 21 (Tex. 2014). The Federal Arbitration Act (FAA) requires that if an agreement provides "a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed."  9 U.S.C.

4

§ 5.[4]  And if an arbitrator is selected in a manner contrary to the manner specified in the agreement, the arbitrator lacks jurisdiction over the dispute. *Americo Life*, 440 S.W.3d at 21. But if the agreement does not provide for an arbitrator selection process and the agreement is governed by the FAA, then the trial court may appoint an arbitrator if the parties cannot agree between themselves. *See In re Serv. Corp. Intern.*, 355 S.W.3d 655, 659 (Tex. 2011) (orig. proceeding) (per curiam), *citing* 9 U.S.C. § 5.

Like all contracts, an arbitration agreement "must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the [agreement's] execution . . ." *Americo Life*, 440 S.W.3d at 22.  To determine the parties' intent, we look to the express language of their agreement.  *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If a written instrument can be given a certain or definite legal meaning or interpretation, it is not ambiguous and a court should construe it as matter of law.  *Id.*  "Whether a contract is ambiguous is [also] a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered."  *Id.* at 394.

When a court construes a writing, it "consider[s] *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Id.* at 393 (emphasis original).  That way, "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions."  *Guardian Tr. Co. v. Bauereisen*, 121 S.W.2d 579, 583 (1938); *see also Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019) (expressly adopting the same principle).

---

[4] The Agreement here specifically provided that arbitration is "governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq." and Dish's motion to compel arbitration sought arbitration under the Federal Arbitration Act.

**B. Analysis**

The relevant text of the Agreement states that: "A Single arbitrator engaged in the practice of law from the American Arbitration Association . . . shall conduct the arbitration under the then current procedures of the AAA's National Rules for the Resolution of Employment Disputes . . . ." Relators argue that this language constitutes an incorporation of the AAA rules as a whole. And those rules have their own provisions for selecting an arbitrator. American Arbitration Ass'n, Employment Arbitration Rules & Mediation Procedures, R-12(c) (amended and effective Nov. 1, 2009). Relators contend that the trial court's appointment of Antcliff amounted to an abuse of discretion because the appointment conflicted with the AAA's selection process.

Delgado concedes that the Agreement "states that any arbitration will be conducted by the arbitrator under the procedures of [the AAA] rules," but she nevertheless contends that the Agreement does not expressly adopt the AAA arbitrator selection process or incorporate all of the AAA rules. Stated differently, Delgado posits that "[a] provision stating that arbitration will be conducted by the arbitrator under the procedures within AAA Rules is not synonymous with stating that AAA must administer the arbitration or appoint the arbitrator." Rather, Delgado argues that the trial court's order complied the terms of the Agreement by appointing Antcliff, who satisfied the Agreement's language that the arbitrator be "[a] single arbitrator engaged in the practice of law from the [AAA]."

Neither the parties' nor our own research has found any authority interpreting the precise language at issue. The parties do cite authorities that make glancing blows to our central question. Ultimately, the contrast between the language at issue in those cases, and the language used in this agreement, leads us to conclude that the relevant clause requires the arbitrator, once selected, to apply AAA rules, but does not require the AAA to manage the selection process.

6

It would have been easy enough for the parties to agree that AAA should handle the selection process for the arbitrator. They could have said something like, "If the parties fail to agree on an arbitrator, then the AAA will appoint the arbitrator under their then current rules." Examples of that kind of language are easy enough to find in the case law. *See In re Service Corp. Int'l*, 355 S.W.3d at 659 (agreement stating, "If the parties fail to or are unable to agree on the selection of an appropriate arbitrator, the AAA shall select the arbitrator pursuant to its rules and procedures."); *Prestonwood Tradition, L.P. v. Jennings*, No. 05-20-00380-CV, 2022 WL 3138799, at *1 (Tex.App.--Dallas Aug. 5, 2022, orig. proceeding) (provision stating, "The member(s) of the Panel shall be chosen by the American Arbitration Association ("AAA") or by mutual agreement between the parties.").

Or, more generally, the parties could have simply said the arbitration as a whole will be governed by the AAA rules, and done so in way that the AAA arbitrator selection process would apply. There are many variants of that kind of provision found in the case law. One variant ties the AAA rules to the "arbitration proceeding." *See Americo Life*, 440 S.W.3d at 20) (agreement stating, "The arbitration proceedings shall be conducted in accordance with the commercial arbitration rules of the American Arbitration Association[.]"); *Ninety Nine Physician Services v. Murray*, No. 05-19-01216-CV, 2021 WL 711502, at *1 n.2 (Tex.App.--Dallas Feb. 22, 2021, no pet.) (mem. op.) (agreement stating, "All arbitration proceedings shall be administered by the AAA and be held in the AAA's Dallas, Texas office."). Another variant is perhaps even clearer, stating that the AAA will "administer" the arbitration under its rules. *See HomeAdvisor, Inc. v. Waddell*, No. 05-19-00669-CV, 2020 WL 2988565, at *2 (Tex.App.--Dallas June 4, 2020, no pet.) (mem.op.) (provision stating, "The exclusive means of resolving any dispute . . . shall be [binding arbitration] administered by the American Arbitration Association."); *In re Nat'l Health Ins. Co.*,

7

109 S.W.3d 552, 553, 556-57 (Tex.App.--Tyler 2002, orig. proceeding) (agreement first stating the "Arbitration shall be administered under the rules of the [AAA]" and then "Unless otherwise agreed by all parties, the arbitrator(s) shall be appointed from a list of qualified persons provided by AAA."). And some clauses broadly tie resolution of the parties' dispute to the AAA rules. *See Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 629 (Tex. 2018) (provision stating, "[T]he disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association"); *Taylor Morrison of Texas, Inc. v. Klein*, No. 14-20-00520-CV, 2021 WL 5459222, at *1 (Tex.App.--Houston [14th Dist.] Nov. 23, 2021, no pet.) (mem. op.) (provision stating, "In the event that a dispute arises between the parties, such dispute shall be resolved by and pursuant to the arbitration rules and procedures of [the] American Arbitration Association in effect at the time the request for arbitration is submitted."); *but see Aspen Tech., Inc. v. Shasha*, 253 S.W.3d 857, 864 (Tex.App.--Houston [14th Dist.] 2008, no pet.) ("agreement that states the arbitration shall be "in accordance with the [AAA Commercial Rules]" does not require the AAA to administer the arbitration).

But the agreement here does not contain the more global adoption of the AAA rules to govern the "administration" of the arbitration, or that the arbitration "proceedings" will be governed by the AAA, or that the "dispute" will be resolved under the AAA rules. Instead, it provides that *arbitrator* "shall conduct the arbitration under the then current procedures of the AAA's National Rules for the Resolution of Employment Disputes." The sequencing used in the clause presupposes that the arbitrator has already been selected by the time the AAA rules are followed. In other words, Dish's construction of the clause places the cart before the horse, because it has the AAA as an entity apply its rules to select the arbitrator. Yet that is a far cry from having the arbitrator, once selected, follow the AAA rules. Dish's construction replaces the actor in the

8

clause (the arbitrator) with a different actor (the AAA). In sum, the Agreement designates the arbitrator as the actor who applies the AAA rules, and not the AAA (as an entity) to apply its rules to select an arbitrator.

Dish's construction also makes the requirement that the arbitrator be "engaged in the practice of law from the American Arbitration Association" superfluous. Because if the agreement adopts the AAA arbitrator selection process, it already requires the arbitrator to be an attorney on the AAA national roster.[5] The qualification phrase would thus serve no function if the AAA was already designated to follow its rules in the selection process.

We must harmonize contract provisions when possible. *Coker*, 650 S.W.2d at 393. That is easy enough to do here. The first sentence of the relevant paragraph expressly makes the Agreement subject to the FAA. Section 5 of the FAA provides that the parties method for naming the arbitrator must be followed, but "if no method be provided therein . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire[.] 9 U.S.C.A. § 5. By incorporating the FAA, the Agreement included this default provision. The Agreement restricts the selected arbitrator's qualification in that the arbitrator must be a lawyer on the AAA panel list. And beyond that, the designated arbitrator must abide the AAA rules in conducting the arbitration. The trial court applied the Agreement in that way, selecting an arbitrator when the parties could not agree, and designating one who met the qualification stated in the Agreement.

---

[5] The American Arbitration Association's website describes its AAA National Roster of Arbitrators and Mediators as "accomplished attorneys with exceptional subject-matter expertise." See *Arbitrators and Mediators*, AMERICAN ARBITRATION ASSOCIATION, https://www.adr.org/aaa-panel (last visited August 25, 2022).

## III.  CONCLUSION

The record before us does not reflect that the trial court clearly abused its discretion by appointing Antcliff as arbitrator.   Accordingly, we deny the relief requested in the petition for writ of mandamus.

JEFF ALLEY, Justice

August 30, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.