

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-18-00216-CV

**IN RE STEPHENS INC.**

Original Mandamus Proceeding[1]

Opinion by:    Irene Rios, Justice

Sitting:       Irene Rios, Justice
               Beth Watkins, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: March 27, 2019

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

In the underlying lawsuit, the trial court granted the real parties in interest's motion to compel discovery of 140 documents that relator contends are all protected under the attorney-client privilege. In this mandamus proceeding, relator asserts the trial court abused its discretion by compelling relator to produce the documents. We agree, and conditionally grant the petition.

### BACKGROUND

In early 2012, Consert Inc. hired relator as its investment banker to assist in seeking additional financing and later identifying a purchaser for the company. Consert also engaged the law firms of Womble Carlyle Sandridge & Rice, LLP ("Womble") and Gray Robinson, P.A. ("Gray-Robinson") to assist with the transaction. Relator engaged its own law firm, Haynes &

---

[1] This proceeding arises out of Cause No. 2017-CI-05787, styled *James E. Bennett, Jr., et al. v. Roy J. Moore, et al.*, pending in the 150th Judicial District Court, Bexar County, Texas, the Honorable Angelica Jimenez presiding.

Boone, LLP ("Haynes & Boone"). Consert and relator, and their respective attorneys, worked together to prepare confidential offering documents and to evaluate purchase offers from potential buyers. In the course of these dealings, Consert shared and discussed documents and information with relator and Haynes & Boone to help facilitate and structure the transaction.

In January 2013, Toshiba Corporation ("Toshiba") and Consert entered into a Merger Agreement. On February 1, 2013, Toshiba acquired Consert. Four years later, several former Consert shareholders (hereinafter, the "plaintiffs') filed suit in Bexar County, Texas against (1) seven former officers and directors of Consert; (2) relator; (3) relator's Managing Director, Joseph Mowery; and (4) Landis+Gyr Technology, Inc.[2] Plaintiffs alleged the defendants sold Consert to Toshiba at a fraction of its fair market value.

During discovery, plaintiffs served relator with requests for production, to which relator raised various objections, including that some of the requests improperly sought documents protected from disclosure by the attorney-client privilege or the work-product privilege. Relator served plaintiffs with a privilege log of withheld documents and produced approximately 95,000 pages of non-privileged documents.

Plaintiffs moved to compel, asserting relator must produce the withheld documents because no attorney-client relationship exists between relator and any of the entities who were parties to the withheld communications. Following a hearing on the motion to compel, relator submitted the documents to the trial court for *in camera* review. The trial court later overruled relator's objections based on attorney-client privilege and/or the work-product doctrine and ordered production of the following seven categories of 140 documents:

---

[2] Landis+Gyr is a Toshiba subsidiary. Plaintiffs also sued, but then later dismissed their claims against Womble. Consert is not a party to this litigation.

Category 1: communications between relator and Consert

Category 2: communications between relator, Consert, and Haynes & Boone (relator's attorneys)

Category 3: communications between relator, Consert, and Womble (Consert's attorneys)

Category 4: communications between relator, Haynes & Boone (relator's attorneys), and Womble (Consert's attorneys)

Category 5: communications between relator, Consert, Haynes & Boone (relator's attorneys), and Womble (Consert's attorneys)

Category 6: communications between relator, Consert, Womble (Consert's attorneys), Haynes & Boone (relator's attorneys), and Gray-Robinson (Consert's attorneys)

Category 7: communications between relator, Consert, Womble (Consert's attorneys), and Gray-Robinson (Consert's attorneys).

According to relator, the 140 documents in the seven categories may be further categorized as follows:

1. emails reflecting legal advice provided by Consert's lawyers to Consert concerning the sale of Consert and other matters, which communications were shared with relator as Consert's representative;

2. information provided to Consert's lawyers necessary for the provision of legal advice about the sale of Consert, which communications were shared with relator as Consert's representative; and

3. emails reflecting legal advice regarding the sale of Consert provided to relator by its lawyers at Haynes & Boone about documents collaboratively prepared with Consert regarding the potential sale of Consert, which emails were shared with Consert.

On April 4, 2018, relator filed its petition for writ of mandamus. The plaintiffs filed a response, to which relator replied. In its petition, relator asserts the withheld documents are shielded from discovery by the attorney-client privilege.[3]

### STANDARD OF REVIEW

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). Mandamus will issue only to correct a clear abuse of discretion when there is no other adequate remedy at law. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d

---

[3] Relator does not argue in its petition that the work-product doctrine protects the withheld documents. Therefore, this opinion does not discuss the applicability of that privilege. *See* TEX. R. CIV. P. 192.5 ("Work Product")

124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). To satisfy the clear abuse of discretion standard, the relator must show "the trial court could reasonably have reached only one decision." *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (orig. proceeding) (quoting *Walker*, 827 S.W.2d at 840). The relator has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam).

"A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Walker*, 827 S.W.2d at 840. Generally, the scope of discovery in a particular case is within the trial court's discretion. *CSX*, 124 S.W.3d at 152. However, a trial court abuses its discretion by ordering discovery that exceeds the scope permitted by the rules of procedure. *Id.* There is no adequate remedy at law when a trial court erroneously orders disclosure of privileged information because the trial court's error cannot be corrected on appeal. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam); *Walker*, 827 S.W.2d at 843.

Accordingly, the issue we must determine is whether any document the trial court ordered produced is covered by a privilege prohibiting involuntary disclosure. In this case, relator asserts the trial court abused its discretion by compelling discovery of documents privileged under Texas Rule of Evidence 503 ("Lawyer-Client Privilege").

### IS THERE A FACT QUESTION ON PRIVILEGE?

Here, there is no dispute Consert engaged relator to provide professional guidance in connection with a proposed business transaction involving Consert and a purchaser, ultimately resulting in the merger with Toshiba. According to relator, in connection with the engagement, Consert needed to and did disclose to relator and relator's attorneys confidential privileged

information to assist with consummation of the transaction. Therefore, relator concludes, because relator and its attorneys were "representatives" of Consert, the communications remained privileged under Rule 503.

In their response to the petition for writ of mandamus, plaintiffs contend there is no presumption in favor of privilege because a fact question on whether the documents are privileged exists and the trial court's determination that the privilege did not apply is, therefore, "conclusive." As a threshold matter, we address plaintiffs' arguments first.

The application of the rules regarding privileges to undisputed facts is a question of law. *See Walker*, 827 S.W.2d at 840 (treating trial court's erroneous denial of requested discovery on the sole basis of court's interpretation of caselaw "as a legal conclusion to be reviewed with limited deference to the trial court"). When the court's interpretation of a privilege against discovery is at issue, we review the court's decision as a legal conclusion. *Osborne v. Johnson*, 954 S.W.2d 180, 183 (Tex. App.—Waco 1997, orig. proceeding); *Marathon Oil Co. v. Moye*, 893 S.W.2d 585, 589 (Tex. App.—Dallas 1994, orig. proceeding). We give limited deference to such a conclusion. *Id.* However, if the evidence presented suggests the privilege may not apply because the communication was not intended to be confidential or because the privilege was waived, a fact issue exists for the trial court to resolve. *Osborne*, 954 S.W.2d at 183; *Cameron Cty. v. Hinojosa*, 760 S.W.2d 742, 745 (Tex. App.—Corpus Christi 1988, orig. proceeding). If the parties present conflicting evidence on the applicability of the privilege, the trial court's decision is conclusive. *Id.*

Plaintiffs contend a fact question exists on whether privilege applies because (1) selected excerpts from relator's counsel's argument at the hearing on plaintiff's motion to compel concede many communications between relator, Consert, and their respective attorneys are not privileged and (2) the face of the withheld documents reveal the documents were shared beyond the client

(Consert) and its attorneys. Plaintiffs contend "where the trial court resolved conflicting evidence following an *in camera* review, the trial court's finding 'must be deemed conclusive.'"

At the hearing on plaintiffs' motion to compel, relator's attorney made the following statements in context:

> . . . it is undisputed that [relator] has two attorney-client relationships. And furthermore, it's undisputed that Consert had attorney-client relationships with Womble [and] the Gray-Robinson firm, And so you have here two companies and their lawyers who both are working together on a complex merger transaction, and so the documents that are at issue are from a limited time period. *We have not put every e-mail between Consert and its lawyers and [relator] on a privilege log. These are a subset.* We have been very narrow to pick just the ones that are indeed privileged, and you will see during your in-camera review that these do relate to legal issues, and that's really the crux of the arguments I heard today from [plaintiffs' counsel]. . . . [Emphasis added.]
> . . .
> And, again, *this is not to say that every issue that came up in the context of this relationship between Consert and [relator] involved a legal issue.* By no means did it. And *so there are plenty of communications that we are not seeking to protect.* This is focused on the specific issues of some of the documents that need to be prepared collaboratively between Consert and [relator] and what information needed to be included in those documents including information pertinent to disclosures that ultimately would be provided to interested purchasers of Consert. [Emphasis added.]

Plaintiffs provide no authoritative support for their contention that the above-emphasized language conceding some of the documents requested by plaintiffs are not privileged waives the privilege for *all* documents requested by plaintiffs. Instead, plaintiffs turn to their argument that the face of the challenged documents demonstrate their transmission beyond simply Consert as the client and Consert's attorneys. Plaintiffs do not challenge the privileged nature of the contents of the withheld documents. Instead, plaintiffs assert the dissemination of the documents "beyond simply the attorney and its client" is evidence the communications were not confidential and/or waived any potential privilege. More specifically, in their motion to compel, plaintiffs contended:

> 1. No attorney-client or any other relationship existed between relator and Consert that would permit relator to withhold its communications with Consert.

2. Womble did not represent relator regarding the Toshiba acquisition and no attorney-client relationship existed between relator and Womble; therefore, relator had no basis upon which to claim its communications with Womble are privileged.

3. No attorney-client relationship existed between relator and Womble, or relator and Consert; therefore, emails from relator to either of these entities are not privileged. To the extent the privilege could possibly apply to such a communication, given the nature of the communications (between business people) and the lack of any communications from any attorney copied on the message, the attorney-client privilege would be inapplicable to this specific communication which does not appear to reflect the requests or provision of any actual legal advice.

4. The inclusion of Womble's client, Consert, on any emails did not create an attorney-client relationship between relator and Womble.

Relator does not dispute that the face of the documents show the documents were shared amongst Consert, relator, and their respective attorneys. However, the question is not the effect of disseminating the documents amongst these parties. The issue is whether the communications contained in the withheld documents remained shielded by privilege because relator was a "representative" of Consert within the scope of Rule 503. Because this question involves the trial court's interpretation of a privilege against discovery, we review the court's decision as a legal conclusion. *Osborne*, 954 S.W.2d at 183; *Marathon Oil*, 893 S.W.2d at 589.

## CONFIDENTIAL COMMUNICATIONS WITH A CLIENT'S REPRESENTATIVE

As applicable here, Rule 503 provides as follows:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client:

> (A) between the client or the client's representative and the client's lawyer . . .;
>
> . . .
>
> (D) between the client's representatives or between the client and the client's representative . . . .

TEX. R. EVID. 503(b)(1)(A), (D).[4]

---

[4] Plaintiffs contend there is no financial advisor-client privilege or accountant-client privilege to shield the documents from production. However, "[t]he absence of [such privileges] does not preclude the applicability of other recognized privileges that arise in the course of the . . . relationship [at issue in this proceeding]." *See In re Tex. Health Res.*, 472

"Rule 503(b) protects not only confidential communications between the lawyer and client, but also the discourse among their representatives. It is an exception to the general principle that the privilege is waived if the lawyer or client voluntarily discloses privileged communications to a third party." *In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 49-50 (Tex. 2012) (orig. proceeding) (citing to TEX. R. EVID. 511(a)(1)). "[B]ecause communications 'between representatives of a client' are protected if they otherwise meet the requirements of the Rule, a lawyer need not be involved as an author or recipient." *In re Monsanto Co.*, 998 S.W.2d 917, 929-30 (Tex. App.—Waco 1999, orig. proceeding) (citing TEX. R. EVID. 503(b)(1)(D)). "This is a very broad privilege as now written." *Id.* at 930.

As the party asserting a privilege from discovery, relator had the burden to produce evidence concerning its applicability. *DuPont*, 136 S.W.3d at 223. This may be accomplished by testimony or affidavit evidence sufficient to establish a prima facie case for the privilege. *In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 261 (Tex. 2005) (orig. proceeding). "The prima facie standard requires only the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *DuPont*, 136 S.W.3d at 223 (quoting *Tex. Tech Univ. Health Scis. Ctr. v. Apodaca*, 876 S.W.2d 402, 407 (Tex. App.—El Paso 1994, writ denied)). "In short, Texas law recognizes that a party asserting privilege may initiate its claim and establish a prima facie case of privilege by submitting evidence short of tendering each and every document." *Living Ctrs. of Tex.*, 175 S.W.3d at 261.

"The mere listing of a specific privilege in a response or a privilege log does not prove that privilege." *Monsanto Co.*, 998 S.W.2d at 926. "The response and log are the vehicles by which the privilege is claimed. Proof of the facts that justify the claim of privilege is necessary. . . .

---

S.W.3d 895, 901 (Tex. App.—Dallas 2015, orig. proceeding) (holding same regarding absence of insurer-insured privilege).

Thus, we look to the affidavits." *Id.* "[A]n affidavit, even if it addresses groups of documents rather than each document individually, has been held to be sufficient to make a prima facie showing of attorney-client and/or work product privilege." *DuPont*, 136 S.W.3d at 223. Also, "[t]he documents themselves may constitute sufficient evidence to make a prima facie showing of attorney-client or work product privilege." *Id.* Once the party asserting the privilege establishes a prima facie case for the privilege, the burden shifts to the party seeking production to refute the claim of privilege. *See In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 279-80 (Tex. 2016) (orig. proceeding).

**A.     Obtain or Act on Legal Advice**

Relator first relies on subsection (a)(2)(A) of Rule 503, which defines a "client's representative" as "a person who has authority to obtain professional legal services for the client or to act for the client on the legal advice rendered." TEX. R. EVID. 503(a)(2)(A). In *XL Specialty Insurance*, the Supreme Court clarified the meaning of the phrase "legal advice rendered" to mean to act on the client's behalf on any advice rendered as a result of the representative "having obtained counsel for" the client. *See* 373 S.W.3d at 55.

Here, the engagement letter does not expressly authorize relator to work with Consert's attorneys or obtain professional legal services for Consert, and relator provided no other evidence it was authorized to do so. In its petition, relator does not contend it had the authority to obtain legal advice for Consert or to act for Consert on legal advice rendered. Relator states only that both itself and Consert "at times sought legal advice from their respective attorneys."

We conclude relator did not establish a prima facie case for privilege under subsection (a)(2)(A) because relator did not produce the "'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *DuPont*, 136 S.W.3d at 223.

**B.** **Make or Receive Confidential Communications**

Relator next relies on subsection (a)(2)(B), which defines a "client's representative" as "any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client." TEX. R. EVID. 503(a)(2)(B). The plaintiffs contend relator is not Consert's representative because relator did not "facilitate the rendition of professional legal services to [Consert], make[] or receive[] a confidential communication while acting in the scope of employment for [Consert]."

As support for its prima facie case of privilege, relator relied on the affidavits of Joseph Mowery, an investment banker employed by relator, and David Baddour, a partner at Womble, which represented Consert; and a privilege log. Mowery stated a March 23, 2012 Mutual Nondisclosure Agreement applied to information to be shared between relator, Consert, and their respective agents during the Consert engagement. He stated the "Consert engagement required, from time-to-time, the legal involvement and advice of Consert's lawyers," including in-house counsel and outside counsel (David Baddour of Womble,) and required relator's involvement in those communications as Consert's representative. According to Mowery, relator's communications with Consert employees and attorneys were kept confidential, were not intended to be disclosed to third parties other than counsel for relator, counsel for Consert, and other representatives of Consert assisting with preparations for presenting a potential investment in Consert to the market.

Mowery also stated the Consert engagement required, from time-to-time, the legal involvement and advice from relator's lawyers, including outside counsel Haynes & Boone. Mowery explained (1) the legal advice relator sought from Haynes & Boone pertained primarily to legal review and analysis of draft documents developed collaboratively by Consert, relator, and counsel to Consert and relator; (2) the documents contained information about Consert, including

Consert's pending legal matters, such as pending or threatened litigation, and intellectual property issues; (3) the documents were prepared in furtherance of a proposed transaction for Consert, as contemplated under the engagement agreement between Consert and relator. Finally, Mowery stated relator's communications sent to or received from Haynes & Boone were kept confidential and were not intended to be disclosed to third parties other than those to whom disclosure was made in furtherance of the rendition of legal services to relator or those reasonably necessary for the transmission of the communication.

In his affidavit, David Baddour said his legal work for Consert included assisting with structuring a transaction to raise capital or enter into a business combination or sale, which was successfully completed in February 2013. In addition to Baddour's legal counsel, Consert also sought professional guidance from relator to identify potential investors or, later, a potential buyer. Baddour and other Womble attorneys provided professional legal services to Consert in 2012 and 2013 on a variety of issues under Delaware law, including advising Consert about: (a) legal issues raised by drafts of documents prepared collaboratively by Consert, relator (acting on behalf of Consert), and legal counsel to Consert and relator; (b) legal strategy discussion, advice about the transaction, and advice about the potential terms thereof; and (c) the drafting and execution of the documents necessary to complete the merger. Baddour also attended Consert's board of directors meetings during which he provided legal updates to the board about pending and anticipated litigation.

According to Baddour, privileged communications, including drafts of documents prepared or revised by Consert's lawyers or by relator's lawyers about the transaction or merger, were exchanged between Consert and relator (and their respective attorneys) with the intent that such draft documents would not be disclosed to any other party, other than those to whom disclosure was made in furtherance of the rendition of legal services to Consert or those reasonably

necessary for the transmission of the communication. Baddour believed that all communications about legal issues related to the transaction or merger that were exchanged between Consert and relator and their respective attorneys were confidential and subject to the attorney-client privilege.

We conclude Mowery's and Baddour's uncontroverted affidavits establish a prima facie case for the attorney-client privilege. In rebuttal, plaintiffs' only argument to refute the privilege is that the documents were disseminated beyond the client and its attorney and no attorney-client relationship existed between relator on the one hand and Consert, Womble, and Gray-Robinson on the other. However, as explained above, no one disputes the communications were shared among these parties. The issue is whether—despite the sharing—the communications remained privileged because relator was Consert's representative within the scope of Rule 503. We conclude relator established it was Consert's representative within the scope of Rule 503(a)(2)(B); therefore, the dissemination of the withheld documents did not waive the attorney-client privilege.

## CONCLUSION

We conditionally grant the petition and direct the trial court, within fifteen days, to vacate its March 14, 2018 "Order on Plaintiffs' Motion to Compel Discovery From Stephens Inc." that compels production of the documents identified in the order.

Irene Rios, Justice