

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00833-CV

**IN RE** Christopher **BURDICK**

Original Mandamus Proceeding[1]

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: March 11, 2020

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

Relator, Christopher Burdick, and his former wife, Kathryn Saunders, are engaged in a discovery dispute over whether certain text messages between Christopher and his current wife are protected under the spousal privilege. Christopher asserts the trial court abused its discretion by overruling his spousal privilege objection. He also asserts the trial court erred by ordering him to produce other spousal communications that are outside the scope of Kathryn's discovery request. We agree and conditionally grant the petition for writ of mandamus.

## BACKGROUND

Christopher and Kathryn were divorced in June 2015. They have two children, a girl born in 2006 and a boy born in 2008. On August 13, 2018, Christopher filed a petition to modify the

[1] This proceeding arises out of Cause No. 2015-CI-00691, styled *In the Interest of A.A.B. and C.C.B., Minor Children*, pending in the 225th Judicial District Court, Bexar County, Texas, the Honorable Peter Sakai presiding.

parent-child relationship in which he asked (1) to be appointed the joint managing conservator with the exclusive right to determine the children's primary residence in Bexar County; (2) that Kathryn's access to and possession of the children be limited; and (3) that Kathryn be required to use a Soberlink device no less than five times daily, to install an interlock device on her motor vehicle, and to submit to drug testing. In his petition for writ of mandamus, Christopher contends he sought the modifications "as a result of an incident that occurred in August 2018." He does not elaborate on the nature of the "incident."[2]

Kathryn served Christopher with a Second Request for Production and Inspection of Documents in which she sought a number of documents including the following:

> 28. Any text message between [Christopher] and [his current wife] Sarah Burdick. Including, but not limited to, any text messages exchanged during the month of August 2018.

Christopher objected and filed a motion for protective order in which he sought protection from producing any communications between him and his current wife Sarah on the ground the communications were protected under the spousal privilege. Kathryn filed a motion to overrule the objections and to compel production. The trial court conducted a hearing on the parties' motions, during which time the court and Christopher's attorney addressed Christopher's motion for protective order:

> [Counsel]: Well, Your Honor, my motion for protective order then is not being —
> I want to be clear, it's not being ruled on today.
> Court: Correct.
> [Counsel]: Okay.

---

[2] During a later hearing, Kathryn's attorney stated:

> I wanted to make sure that we're clear on the spousal privilege. Here's the issue Your Honor. This case was initiated, I'll be very brief, but I think you need a little factual background. This case was initiated in August of 2018 by [Christopher]. It was initiated after the two children, who were in the home of their mother, my client, and had been following a week-on, week-off schedule for about three years, essentially, were — either ran away or were lured away by their father, but it is uncontested that both their father and his current wife were involved in picking them up a block or so from my client's home without my client's knowledge or consent.

The court then addressed Christopher's objections to Kathryn's second request for production, including number 28, which is the subject of this original proceeding. The following exchange occurred between the trial court and Christopher's attorney:

> [Counsel]: Okay. Then No. 28 is a spousal privilege, Your Honor.
> Court: I will allow you to assert that. And, obviously, then it will have to be an in camera review and an argument of the law as to whether or not your privilege should be sustained. So —
> [Counsel] Well, now, Your Honor —
> Court: — I just ask that you submit it by way of privileged log.
> [Counsel]: Okay. And —
> . . .
> [Counsel]: — how long do I have to submit these documents?
> Court: And how much —
> [Counsel]: Your Honor, I've been told they're voluminous.
> Court: How much time do you need?
> [Counsel]: Well, there's about 500 pages of text messages between my client and his spouse.

Following the hearing, the trial court issued a letter ruling overruling Christopher's spousal privilege objection as well as his other general objections. Christopher filed his petition for writ of mandamus (and, later, an amended petition). We stayed the trial court's ruling compelling production of the text messages and ordered Christopher to file the text messages with this court for an in camera review. The text messages have been filed and Kathryn filed a response to the petition.

## STANDARD OF REVIEW

Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion when there is no other adequate remedy at law. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). To satisfy the clear abuse of discretion standard, the relator must show "the trial court could reasonably have reached only one decision." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). "Mandamus is appropriate to protect confidential documents from discovery." *In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 256

(Tex. 2005) (orig. proceeding). "If the trial court issues an erroneous order requiring the production of privileged documents, the party claiming the privilege is left without an adequate appellate remedy." *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 279 (Tex. 2016) (orig. proceeding).

## SPOUSAL PRIVILEGE

Texas Rule of Evidence 504 provides in pertinent part as follows:

(a) Confidential Communication Privilege.

> (1) Definition. A communication is "confidential" if a person makes it privately to the person's spouse and does not intend its disclosure to any other person.
> (2) General Rule. A person has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made to the person's spouse while they were married. This privilege survives termination of the marriage.
> . . . .

TEX. R. EVID. 504(a)(1), (2).

The spousal privilege does not apply to, among other things, communications made in the furtherance of crime or fraud; and crimes against family, spouse, household member, or minor child. *See id.* 504(a)(4).

As the party seeking to avoid discovery, Christopher had the burden to establish by testimony or affidavit a prima facie case for the privilege. *See Christus Santa Rosa*, 492 S.W.3d at 279. In her response to Christopher's petition for writ of mandamus, Kathryn contended Christopher did not present any affidavits or other evidence to support his claim that the requested text messages were privileged. However, the documents themselves may constitute sufficient evidence to make the prima facie showing. *In re Stephens Inc.*, 579 S.W.3d 438, 445 (Tex. App.— San Antonio 2019, orig. proceeding). If the party asserting the privilege establishes a prima facie case for the privilege and "tenders documents to the trial court, the trial court must conduct an in

camera inspection of those documents before deciding to compel production." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam). If Christopher presented a prima facie case establishing the text messages are privileged, the burden then shifted to Kathryn to prove an exception to the privilege applies. *See Christus Santa Rosa*, 492 S.W.3d at 279-80.

We have reviewed the 700 pages of text messages submitted for our in camera review. Every text message is a communication between only Christopher and Sarah, and no third party is included within those communications. The text messages themselves, therefore, establish a prima facie case for the private nature of the act of communication between spouses. *See* TEX. R. EVID. 504(a)(1) ("A communication is 'confidential' if a person makes it privately to the person's spouse . . . ."). However, whether Christopher did not intend to disclose those text messages to any other person is a question of fact. *See Osborne v. Johnson*, 954 S.W.2d 180, 184 (Tex. App.—Waco 1997, orig. proceeding) (holding, "issue of confidentiality focuses on the intent of the parties at the time the communications are made"); *Cameron County v. Hinojosa*, 760 S.W.2d 742, 745 (Tex. App.—Corpus Christi 1988, orig. proceeding) ("However, if there is evidence that suggests the privilege may not apply because the communication was not intended to be confidential, the privilege was waived, etc., it becomes a fact question for the trial court, which must be resolved from the documents themselves and/or extrinsic evidence presented at the hearing.").

If there is evidence the privilege may not apply because the communication was not intended to remain confidential or because the privilege was waived, a fact issue exists for the trial court to resolve. *Stephens Inc.*, 579 S.W.3d at 443. "If the parties present conflicting evidence on the applicability of the privilege, the trial court's decision is conclusive." *Id.* The record appears to show Christopher was not given the opportunity to present evidence that he and Sarah intended the text messages to remain confidential because the trial court declined to hear his motion for

protective order. Kathryn's attorney alluded to possible contradictory evidence that the spouses did not intend the communications to be confidential or the privilege was waived by stating at the hearing:

> Remember what the rule says. Rule 504 says you have to have intended the communication to have been confidential. And if they're texting to one another about where to meet, and then go to the police station, that's not confidential. *But I can argue that at the appropriate time*, but I wanted you to have that database. [Emphasis added.]

Because the trial court did not consider Christopher's motion for protective order, neither Christopher nor Kathryn was able to establish whether the text messages were intended for disclosure to any other person or whether an exception to the spousal privilege applied. Therefore, the trial court abused its discretion by compelling production of the text messages.

## CONCLUSION

We conclude the trial court abused its discretion by overruling Christopher's spousal privilege objection in the absence of allowing evidence on the issue of whether Christopher did not intend the "disclosure [of the text messages] to any other person." *See* TEX. R. EVID. 504(a)(1). Therefore, we conditionally grant the petition for writ of mandamus and direct the trial court to vacate its letter ruling of November 15, 2019, no later than fifteen days from the date of this opinion.[3]

Luz Elena D. Chapa, Justice

---

[3] In his second issue, Christopher contends the trial court's hearing only addressed Kathryn's second request for production and not her third request; however, the binder of text messages given to the trial court for in camera review included text messages from September 1, 2018 through September 3, 2019—all outside the scope of Kathryn's second request for production. Therefore, Christopher asserts the trial court abused its discretion by ordering the entire binder of text messages turned over to Kathryn. Because we order the trial court to vacate its November 15, 2019 letter ruling, we do not address this complaint.